Superior Oil Corporation, Plaintiff, *v.* Central Union Trust Company of New York, as Trustee under First Mortgage and Deed of Trust Dated as of February 15, 1924, Defendant.

First Department, April 9, 1925.

Corporations — corporate bonds — trust mortgage provided for exchange of bonds for stock — bonds so exchanged were to be canceled by trustee and delivered to corporation — mortgage provided for sinking fund to be paid in cash or by delivery of bonds to trustee for cancellation — delivery of canceled bonds exchanged for stock complied with sinking fund provision.

Under a corporate trust mortgage given to secure an issue of corporate bonds which provides for the exchange of bonds for stock of the corporation at the option of the bondholders, and that bonds so received in exchange shall be canceled by the trustee and delivered to the corporation, a delivery by the corporation to the trustee of canceled bonds complies under the circumstances of this case and the agreements of the parties, with the sinking fund provision in the mortgage which authorizes the establishment of a sinking fund by the payment of cash to the trustee or at the option of the corporation by the delivery of bonds to the trustee.

The purpose of the sinking fund provision, being to increase the security of the bonds, is satisfied if the amount of the bonds is reduced to the extent required by the sinking fund provision.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Davis, Wagner, Heater & Holton* [*Arnold L. Davis* of counsel], for the plaintiff.

*Larkin, Rathbone & Perry* [*James L. Banks, Jr.,* of counsel; *Albert Rathbone* with him on the brief], for the defendant.

MARTIN, J.:

On February 15, 1924, the plaintiff duly executed and delivered to the defendant, as trustee, an indenture of mortgage and deed of trust, covering part of the plaintiff's property, to secure an issue of its bonds to an aggregate principal amount of $1,000,000, payable February 15, 1929, the bonds being in denominations of $100, $500 and $1,000 each. Thereafter the bonds to the extent of $1,000,000 were executed by the plaintiff in accordance with the provisions of the mortgage. Of these bonds $714,200 are still outstanding in the hands of *bona fide* purchasers for value.

Under date of February 15, 1924, the plaintiff also executed and delivered to the Central Union Trust Company of New York, as trustee, an agreement in writing known as the " trust agreement," and on March 10, 1924, delivered to the Central Union Trust Company of New York, as trustee under said agreement, 300,000 shares of the capital stock of the plaintiff without par value, said 300,000 shares being sufficient in amount to meet the requirements of certain " stock option warrants " referred to in said agreement, should the holders thereof decide to exercise their rights thereunder. The bonds sold were accompanied by these warrants, the amount of same in each instance being commensurate with the amount of the bond sold.

By section 4 of article III of the agreement payment for the stock covered by said stock option warrants is provided for as follows:

" Payment of the purchase price of the stock called for by any Stock Option Warrant shall accompany the surrender of the Warrant, at the place therein specified, and may be made: (1) by certified check or bank draft drawn upon New York or Philadelphia funds, and/or (2) by surrender of the above-mentioned Five-Year First Mortgage 7% Sinking Fund Gold Bonds of the Corporation, with all unmatured interest coupons thereto attached, to be taken, in lieu of such certified check or bank draft, at the principal amount thereof, provided that Bonds so surrendered shall not have been previously called for redemption. In the event of such surrender of Bonds in payment for said stock as aforesaid, no refund of any difference between the purchase price of said stock and the

principal amount of Bonds so surrendered shall be made by the Corporation.

"In the event that payment of the purchase price of the stock called for by any Warrant be made, in whole or in part, by the surrender of Bonds, as hereinabove provided, a cash adjustment shall be made between the Corporation and the holder or registered owner of any such Bond so surrendered, in respect to the accrued interest on such Bond. To make such cash adjustment, the Corporation shall at the time of such surrender pay or cause to be paid to the holder or registered owner of any such Bond interest not previously paid thereon at the rate named in said Bond to the date of surrender thereof.

"All Bonds and coupons so surrendered in payment of all or any part of the purchase price of such stock, as provided in this Section, shall be cancelled by the Trustee and delivered to the Corporation."

By section 1 of article II of the mortgage it is provided:

"The Corporation covenants and agrees that it will, so long as any of the Bonds remain outstanding, pay to the Trustee in gold coin of the United States of America, of, or equal to, the standard of weight and fineness existing February 15, 1924, as a Sinking Fund, the sum of $200,000 annually, on or before February 15 in each year, the first Sinking Fund payment to be made February 15, 1925. Moneys paid into the Sinking Fund shall be used by the Trustee in the purchase and /or redemption of Bonds as hereinafter provided in this Mortgage.

"The Corporation may at its option, in lieu of the payment of cash, as above mentioned, make payment of all or any part thereof by delivering Bonds to the Trustee, and the Corporation shall be credited on its Sinking Fund requirements, with respect to such deliveries, with an amount equal to the aggregate principal amount of the Bonds so delivered, and such Bonds shall, to that extent, reduce the Corporation's obligation to make payments into the Sinking Fund as above provided. The Corporation may make payments into the Sinking Fund in addition to the payments above mentioned, but it shall not be credited in respect to its obligations as above set forth with the amount of any such additional payments."

By section 7 of article II of the mortgage it is provided:

"All Bonds, as and when purchased for the Sinking Fund, or redeemed and paid, or delivered by the Corporation in lieu of the cash Sinking Fund payments as herein provided, shall, together with all unmatured coupons appertaining thereto, immediately upon such purchase or redemption or delivery be cancelled and destroyed

by the Trustee and its certificate of such cancellation and destruction delivered to the Corporation, and no Bonds shall be issued in lieu thereof."

The form of bond set forth in the mortgage contains the following language in respect of the sinking fund:

" In lieu of the payment in cash of all or any part of the moneys so payable into the Sinking Fund, the Corporation may, at its option, deliver Bonds to the Trustee for cancellation, and shall be credited upon its application to make payments into the Sinking Fund with an amount equal to the aggregate principal amount of Bonds so delivered."

Prior to February 15, 1925, various holders of the aforesaid " stock option warrants " had exercised their rights thereunder by turning them in to the Central Union Trust Company of New York, as trustee under the agreement, and paying for the capital stock of plaintiff called for in said warrants by delivering to the Central Union Trust Company of New York, as such trustee, bonds of the plaintiff in the principal amount of $285,800, in lieu of cash. Thereupon the Central Union Trust Company of New York, as trustee under the agreement, acting under the provisions of section 4 of article III thereof, quoted above, canceled all the signatures upon said bonds and upon the coupons attached thereto, caused numerous holes to be punched in the text of said bonds and coupons, and thereby canceled them in accordance with the intent and purpose of said section 4 of article III of said agreement, and delivered the said bonds so canceled to the plaintiff.

Thereafter and prior to February 15, 1925, when under section 1 of article II of the mortgage the first sinking fund payment by the plaintiff became due, it delivered its bonds, so canceled as aforesaid, to the extent of the principal amount of $200,000 to the defendant, trustee under the mortgage, as payment in lieu of cash to the extent of $200,000 on the first annual payment into said sinking fund, and, at the request of the plaintiff, the defendant, as trustee under the said mortgage, received said bonds, so canceled, from the plaintiff, and thereupon destroyed the same by cremation. The defendant expressly refused to accept the delivery of the bonds so canceled as a compliance with the sinking fund requirements of section 1 of article II of the mortgage. No other payment has been tendered by the plaintiff to the defendant on account of the sinking fund requirement.

The defendant contends that the cancellation of bonds in compliance with the provisions of the agreement constituted an extinguishment of the debt represented by said bonds; and that when so canceled the instruments became mere pieces of paper

and could not be thereafter used to make payment into the sinking fund.

The purpose served by the provision for retirement at the rate of $200,000 a year is two-fold: *First*, it is intended to bring about payment of the entire loan within five years; *secondly*, it is a protection against possible decrease in the security at any time or times or progressively from time to time. The lenders naturally desired protection against possible depreciation and exhaustion as to part or all of the property mortgaged. Their interests in this respect were safeguarded by a requirement that the principal to be assured by resort to the security, if necessary, would be reduced at the rate of $200,000 a year. Such a reduction covered all the requirements imposed by or for the maintenance of an equity, over the amount remaining unpaid, such as would imply ample protection to the bondholders. The object sought is attained whether the total principal of the loan is reduced in the stated yearly amount by plaintiff's buying in bonds or by warrant-holders surrendering bonds in payment of stock. The stock ultimately represents an interest in the mortgaged property subordinate to the lien of the mortgage.

The agreement provides that the bonds received by the trustee for stock are to be canceled and delivered to the plaintiff, whereas those turned in to the trustee on account of the annual installments are to be canceled and destroyed. If the bonds received in payment of stock are to be counted as having been finally paid off on the principal of the loan, there is no reason why the certificates should not be destroyed the same as when bonds are paid in on account of an annual installment. The provision for turning over to plaintiff the canceled certificates when bonds are exchanged for stock would have no purpose if plaintiff could not apply the amounts of the bonds paid off by stock in reduction of the required annual payment of $200,000. Otherwise such provision would be inconsistent with that requiring the destruction of certificates applied on annual payments.

Because the bonds turned in for stock were canceled it is not to be inferred that they might not be regarded as part of an annual installment. Naturally we would, with plaintiff, infer the contrary. Counsel for the trustee go beyond the substantial requirements imposed on the borrower when they urge that discharged bonds are merely pieces of paper which are not to be considered for any purpose. The important fact is that when they are discharged the total loan is reduced *pro tanto*. If it be annually reduced $200,000 plaintiff's agreement is performed in this respect. In substance there is no suggestion by plaintiff that the annual pay

off may be made in pieces of paper no longer indicative of their original character as bonds. What plaintiff contends for is that bonds which have been paid off in stock may be counted as part of the $200,000 annually required to be paid off. Were this not so, the agreement would not have provided for turning the certificates over to plaintiff after they had been canceled.

If we are correct in our interpretation of the agreements now before us, it follows that the plaintiff had the right to deliver canceled bonds to the extent of $200,000 on the sinking fund indebtedness, and that a payment so made is in accordance with the terms of the agreement.

The plaintiff is, therefore, entitled to judgment.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment directed in favor of plaintiff. Settle order on notice.