## ANDREWS v. NORDDEUTSCHER LLOYD (BREMEN) (NORTH GERMAN LLOYD OF BREMEN) et al.

### No. 7627.

District Court, E. D. New York.

May 27, 1936.

Thomas F. Murphy, of New York City, for plaintiff.

Cotton, Franklin, Wright & Gordon, of New York City, for defendant Norddeutscher Lloyd.

Cravath, deGersdorff, Swaine & Wood, of New York City, for defendants Felix M. Warburg et al.

---

[1] Arbitrator's opinion.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, for defendant Guaranty Trust Co. of New York.

GALSTON, District Judge.

This is an equity action which was begun on April 8, 1935, in the Supreme Court of the state of New York. On the petition of the defendant Lloyd the suit was thereafter removed to this court on the ground of diversity of citizenship between the plaintiff and Lloyd, and on the further ground that the other defendants were merely nominal parties to the action. Plaintiff's motion to remand the action to the state court was denied. 12 F.Supp. 129. The facts are not in dispute and the cause is submitted on a stipulation of facts.

The plaintiff is the owner of three bonds of the par value of $1,000 each, known as Twenty-Year 6 per cent. Sinking Fund Gold bonds, dated November 1, 1927, of an authorized issue of the defendant Lloyd in the sum of $20,000,000. The plaintiff alleges the breach of certain provisions of the trust indenture defining the rights of the parties, to which detailed reference will be made presently.

It is particularly the sinking fund provisions which are the subject of attack. It is alleged in breach of its undertaking that for fifteen days prior to November 1, 1933, and since that time semiannually thereafter, Lloyd failed to pay the sum of $902,500 or any part thereof due at such times. Plaintiff seeks to have such sums paid by Lloyd to the fiscal agents until all of the outstanding bonds in the agreement shall have been paid both as to principal and interest.

It appears that in the latter part of 1933 Lloyd faced a difficult financial situation and it became necessary to readjust this issue of bonds so as to reduce, or rather make less onerous, the obligations thereunder. Accordingly, it caused a letter to be distributed on December 14, 1933, setting forth its financial condition and a proposed plan of readjustment. The main end sought was to reduce its fixed interest charges. This it proposed to the bondholders by asking them to agree to a change in rate from 6 per cent. to 4 per cent. in fixed interest and 2 per cent. in contingent interest, payable if earned. By way of compensation, the plan provided substantially as follows:

1. Lloyd was to appoint an American subsidiary to collect gross dollar revenues from sources in the United States to pay the new interest charges on the bonds for the benefit of the coupon holders. Also, "the German governmental authorities, recognizing that the financial condition of the company requires the adoption of the Plan, have in a letter to the company approved the foregoing arrangement and have advised that it will not be subject to any German transfer or other governmental restrictions."

2. Assenting bondholders were to receive for each $1,000 bond a warrant entitling the holder to purchase, prior to May 1, 1943, at 105 per cent. RM 500 par value of the ordinary shares of the company.

3. The principal of $18,500,000 of outstanding debt of Lloyd was to be converted into junior obligations or otherwise eliminated as a debt charge ranking pari passu with the assenting bonds.

The plan of readjustment became operative on June 22, 1934. Bondholders holding 87 per cent. of the outstanding aggregate principal sum accepted the plan and deposited their bonds in the amount of $14,276,500. Lloyd acquired these bonds, stamped by the fiscal agents, for which it gave new bonds of an authorized new issue. The terms and conditions of this new issue in the aggregate sum of $16,532,000 are set forth in an indenture executed June 25, 1934. It appears from the stipulation that Lloyd has complied with all the terms and conditions of the new indenture. The sinking fund provisions of the new indenture provide for the retirement of $16,632,000 in the aggregate of the new issue at the same rate as for the retirement of the old issue.

The chief cause of complaint by the plaintiff seems to be that the defendant in meeting the sinking fund provisions of the original indenture, has been delivering to the fiscal agent, with the intention of complying with its covenants, stamped bonds deposited under the plan of readjustment; and plaintiff seeks to have Lloyd enjoined from using those bonds for such purpose.

Plaintiff urges that the delivery of stamped bonds is not a compliance with article III of the agreement. Article III provides in part:

"III. Until all the bonds shall have been retired or redeemed, the Company will pay to the fiscal agents. * * *

"(b) At least fifteen days before November 1, 1929 and at least fifteen days before May 1 and November 1 in each year thereafter, the sum of nine hundred two thousand five hundred '($902,500) dollars for the payment of the interest on the bonds and as a sinking fund for the redemption of bonds as hereinafter in this Article III provided. * * *

"The Company shall have the right not less than forty days prior to November 1, 1929, or any interest payment date thereafter, to deliver to the fiscal agents bonds * * * to an aggregate principal amount not exceeding that part of the amount payable by the Company to the fiscal agents under clause (b) of this Article III."

Lloyd contends that it has committed no breach of its covenants with respect to sinking fund provisions and that by a timely deposit every six months of the requisite amount of bonds with coupons attached it has fully met the terms thereof.

Certainly it cannot be disputed that prior to the adoption of the readjustment plan Lloyd, under article III, was privileged to deposit ·bonds which it had acquired in the open market by purchase or otherwise. Has the adoption of the reorganization plan deprived Lloyd of that right? The bonds used by Lloyd for sinking fund purposes after May 1, 1934, and delivered to the fiscal agents bear the legend:

"This Bond has been deposited under and is subject to the provisions of the North German Lloyd Plan of Readjustment dated December 4, 1933 (hereinafter called the 'Plan'), to which reference is hereby made. Accordingly, the holder hereof, for himself and his assigns, (a) has waived, as against Norddeutscher Lloyd, Bremen (hereinafter called the 'Company'), its obligation to make the 'old service payments' (as hereinafter defined), (b) has agreed not to request the American or the German Trustee under the' Trust Agreement mentioned in this Bond to declare the principal of the Twenty-Year 6% Sinking Fund Gold Bonds (hereinafter called the 'Bonds') of the Company, whether or not subject to the Plan, or any of them, to be due and payable because of default in the 'old service payments', (c) has irrevocably directed said Trustees not to declare the principal of the Bonds, whether or not deposited under the Plan, or any of them, to be due and payable or to make any demand or take any action and/or in-

stitute any proceeding whatsoever because of any such default, and has directed said Trustees to act and proceed in all respects as if no such default had occurred and (d) has irrevocably authorized and directed the American Trustee under said Trust Agreement, prior to any delivery of a Bond in exchange or in substitution for or in lieu of this Bond, to present such substituted Bond and appurtenant coupons to the Company for stamping as provided in the Plan. 'Old service payments' as used herein, means payments of interest or payments for the service of interest or sinking fund, as provided 'for in the Bonds, whether or not deposited under the Plan, and as provided for in said Trust Agreement."

The stamped bonds which are now being used are in all respects the same bonds which Lloyd was' privileged to use in meeting sinking fund provisions. They were · acquired for a valuable consideration.

A case bearing closely on the situation presented herein is Superior Oil Corporation v. Central Union Trust Company, 212 App.Div. 548, 209 N.Y.S. 171, 175. The plaintiff therein had executed and de-. livered to the defendant as trustee an indenture of mortgage and deed of trust covering part of the plaintiff's property, to secure an issue of bonds of the aggregate amount of $1,000,000. At the same time the plaintiff executed to the defendant and delivered to it under the agreement 300,-000 shares of its capital stock to meet requirements of certain stock option warrants referred to in the agreement. The bonds were sold accompanied by the warrants. The agreement provided that stock could be purchased by surrender of the bonds and that all bonds so surrendered should be canceled by 'the trustee and delivered to the corporation. The mortgage provided for a sinking fund and instead of cash the corporation was privileged to make payment by delivering bonds to the trustee, and further provided that all bonds when purchased for the sinking fund, or redeemed and paid or delivered to the corporation in lieu of sinking fund payments, be canceled and destroyed by the trustee.

It appeared that various holders of stock warrants exercised their rights to the acquired stock and delivered to the trustee. bonds of the plaintiff. The trust company then canceled all the signatures upon the bonds, caused numerous holes to be punched in the text, thereby canceling them

in accordance with the intent and purpose of the agreement between the parties, and delivered the bonds so canceled to the plaintiff. Thereafter, when the first sinking fund payment by the plaintiff became due, it delivered those bonds thus canceled in lieu of cash as a sinking fund payment. Defendant contended that the prior cancellation made these bonds mere pieces of paper and that they could not thereafter be used to make sinking fund payments. In disagreement with that position, the court said:

"Because the bonds turned in for stock were canceled, it is not to be inferred that they might not be regarded as part of an annual installment. Naturally we would, with plaintiff, infer the contrary. Counsel for the trustee go beyond the substantial requirements imposed on the borrower when they urge that discharged bonds are merely pieces of paper, which are not to be considered for any purpose. The important fact is that, when they are discharged, the total loan is reduced pro tanto. If it be annually reduced $200,000, plaintiff's agreement is performed in this respect. In substance there is no suggestion by plaintiff that the annual pay-off may be made in pieces of paper no longer indicative of their original character as bonds. What plaintiff contends for is that bonds which have been paid off in stock may be counted as part of the $200,000 annually required to be paid off. Were this not so, the agreement would not have provided for turning the certificates over to plaintiff after they had been canceled."

The facts presented in the suit at bar bear more heavily against the position of the plaintiff herein. The bonds exchanged were not canceled. Each time a deposit of them is made for sinking fund purposes there is a reduction in the principal of outstanding bonds issued under the agreement of 1927. That the defendant has increased its liabilities by the issuance of new obligations is not an invasion of any of the plaintiff's rights. There was no covenant not to do so. The most that the plaintiff can insist upon is compliance with the terms of the indenture relating to the original issue.

Article XXIX of the old indenture states that the agreement shall be deemed to be and shall be construed as a New York contract and interpreted according to the laws of the state of New York. Superior Oil Corporation v. Central Union Trust Company, supra, is the only case which has been cited in which the facts are substantially similar to those herein. Plaintiff's brief admits that she has found no case squarely in point.

Holding as I do that plaintiff has failed to show a breach of the sinking fund provisions, the complaint will be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.